UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Jane Doe,
Plaintiff, Pro Se,

v.

142 Garth Road Owners, Inc.; Blue Woods Management Group, Inc.; Greg DeLanoy, Managing Agent; Town of Eastchester,

Defendants.


COMPLAINT

NATURE OF THE ACTION

This is a civil action for housing discrimination, disability and gender discrimination, retaliation, civil rights violations under 42 U.S.C. § 1983, and related state law claims. Plaintiff is a shareholder and resident of 142 Garth Road in Scarsdale, Westchester County, New York. She suffers from generalized anxiety disorder (GAD) and recurred post traumatic stress disorder (PTSD), which became permanent disabilities exacerbated by unpermitted flooring plus structural pluming work and persistent noise nuisance for almost two years despite delayed wall to wall carpeting after a year, disability plus gender VAWA discrimination, and the Defendants' refusal to accommodate her condition.

Plaintiff seeks damages and injunctive relief for Defendants' failure to enforce house rules, fraudulent DOB filings, denial of disability accommodations, retaliation, and municipal complicity, which have deprived her of the equal opportunity to use and enjoy her home.


References to "fraudulent," "falsified," or "cover-up" are pleaded upon information and belief, based on DOB records, timestamped photos, retroactive permit filing of a ghost master plumber, non-distribution of 2021 House Rules, and superintendent admissions, and are not intended as standalone common-law fraud claims unless otherwise specified.

The enabling conduct of the Superintendent, the deliberate inaction of management, and the deliberate concealment by the Eastchester Department of Buildings and Police Department foreseeably encouraged and emboldened Apartment 2J's owner to escalate his hostile and retaliatory behavior toward Plaintiff. By refusing to enforce code requirements, dismissing valid permit-fraud complaints, and discouraging Plaintiff from reporting violations, these municipal actors and fiduciary agents created an environment of impunity. This pattern of tolerance and bias communicated to 2J that he could ignore Small Claims Court stipulations, retaliate after mediation, and continue discriminatory conduct without consequence. Such municipal and management complicity not only aggravated Plaintiff's disability but also constituted coercion and intimidation prohibited under the Fair Housing Act, 42 U.S.C. § 3617.

RETALIATION: Plaintiff further alleges that Defendants engaged in unlawful retaliation in violation of the Fair Housing Act, 42 U.S.C. § 3617, and related statutes. After Plaintiff requested disability accommodation, reported permit/code violations, and filed municipal and administrative complaints, Defendants undertook retaliatory acts. These included ignoring five valid medical accommodation requests, selectively enforcing house rules, and unilaterally amending rules to weaken Plaintiff's VAWA-based no-key protection. In July 2025, the Board slipped under Plaintiff's door new House Rules containing threatening eviction language, bypassing shareholder approval and applying them in a manner disproportionately affecting Plaintiff. The timing and content of these amendments demonstrate retaliatory motive intended to chill Plaintiff's exercise of fair housing rights. Such actions constitute coercion, intimidation, threats, and interference prohibited under FHA § 3617.

Further, when Plaintiff's therapist and physician submitted medical requests for disability-based financial fee waivers due to financial hardship brought about by the nuisance, Defendants responded by placing on Plaintiff's door a second delivery of the building's financial statement together with the standard wording of a legal notice threatening action for nonpayment of maintenance within 15 days. This was not a neutral accounting measure, but a retaliatory act designed to intimidate and pressure Plaintiff to assert her rights under the Fair Housing Act and related disability protections.

JURISDICTION AND VENUE

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), because claims are brought under:

- Fair Housing Act (42 U.S.C. §§ 3601-3619)
- Americans with Disabilities Act (42 U.S.C. § 12131 et seq.)
- Violence Against Women Act (34 U.S.C. § 12491)
- 42 U.S.C. § 1983 (civil rights violations under color of state law, including municipal liability under Monell v. Dep't of Social Services, 436 U.S. 658 (1978))

This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over related state and local claims (breach of fiduciary duty, breach of habitability, negligence, nuisance, retaliation). The state-law claims arise from the same nucleus of operative facts and form part of the same case or controversy under 28 U.S.C. § 1367(a).

Venue is proper in SDNY under 28 U.S.C. § 1391(b) because the events occurred in Westchester County, within this District.

PARTIES

- Plaintiff: Jane Doe (true identity on file with the Court under seal), a resident and shareholder of 142 Garth Road, Scarsdale, NY. Plaintiff seeks leave to proceed under pseudonym pursuant to VAWA (34 U.S.C. § 12491), the Fair Housing Act, and the Americans with Disabilities Act, in order to protect her privacy, safety, and health.
- 142 Garth Road Owners, Inc.: Cooperative housing corporation that owns the building.
- Blue Woods Management Group, Inc. & Greg DeLanoy: Managing agent and agent of the Co-op Board.
- Board of Directors: Past and Current Fiduciaries from around October 2023, responsible for governance of the Co-op under New York Business Corporation Law (BCL §§ 717 and 720).
- Town of Eastchester: Municipal entity responsible for the actions of its agencies, including the Department of Buildings (DOB) and Police Department, which failed to enforce code violations, discouraged Plaintiff from reporting permit fraud, and refused to document complaints of permit fraud. Liability attaches under Monell because these failures reflect official policies, customs, or deliberate indifference.

FACTUAL ALLEGATIONS

Plaintiff has lived at 142 Garth Road for years and suffers from medically documented GAD and recurring PTSD which became permanent due to noise above her. She is also a survivor of gender-based violence and had been in remission from transient PTSD for nearly six years, following recovery documented in 2017. The recurrence and

permanence of her disability were directly aggravated by the persistent noise and discriminatory inaction described herein.

Beginning in or about late September and October 2023, noise from Apt. 2J (purchased by Mr. Vincent Catarinacchio in June 2023) caused severe health deterioration after weeks of denied construction noise heard above her unit. He removed previous owner's wall-to-wall carpeting, illegally installed hardwood flooring with insufficient underlayment and no board approval, tore down bathroom walls and installed a cast iron bathtub without required DOB permits. In addition, after SCC mediation he yelled at Plaintiff after knowing her VAWA status to get out of his commitments, failed to completely comply with the terms of the stipulation agreement, and attempted to gaslight Plaintiff by portraying her as his harasser and stalker. He further produced no signed receipts, board approvals, or signed documentation supporting his renovations, underscoring that the work was unpermitted, concealed, and not authorized by the Board nor DOB. Superintendent Aldo Jimenez enabled and actively concealed these violations despite knowing the work required permits and impartial enforcement, further evidencing collusion and deliberate cover-up by building management. For the avoidance of doubt, Plaintiff relies on the executed SCC stipulation and subsequent non-compliance, and does not rely on privileged settlement communications for the merits of her claims.

Superintendent Aldo and his workers performed unlicensed plumbing and construction, violating both the Co-op's House Rules and DOB codes. 2021 House Rules 27 & 28 require 80% floor carpeting or wall-to-wall carpeting if needed, inspections and total compliance within 30 days, and forbid alterations increasing sound transmission. Defendants failed to enforce all these rules based on the 2021 House Rules which were signed for 2023 purchase of Apartment 2J. For many years, Defendants further deprived shareholders of access to the operative House Rules and later introduced revised 2025 versions without any shareholder vote or approval, undermining transparency, governance rights, and accountability. Independently of any liability of the upstairs unit owner, the Co-op and its Board owed and breached non-delegable duties under the proprietary lease and House Rules to prevent and abate noise transmission and unpermitted work, rendering them directly liable for failure to enforce and supervise compliance.

Plaintiff repeatedly requested reasonable accommodation respectfully (soundproofing, ceiling remediation) supported by medical documentation. The Board and management ignored or denied all these requests without getting into the FHA required interactive process. Plaintiff initially paid for modifications herself due to lengthy inaction for many

months by management in April 2025, eliminating any 'undue burden' defense. Structurally, however, floors and ceilings are the Co-op's responsibility under New York law and governing proprietary lease, making Defendants' refusal to act a breach of their non-delegable duty to maintain common elements. Plaintiff's initial voluntary payment therefore not only relieved Defendants of costs they were obligated to bear but also underscores their ongoing failure to fulfill core fiduciary and habitability obligations. Plaintiff would also consistently report the well documented hostilities, intimidation, and retaliatory acts of Apartment 2J's owner to management, which were equally belittled or ignored, thereby compounding the legal implications of their inaction or delayed action, and reinforcing Defendants' complicity in the discriminatory environment. This obligation was expressly acknowledged by Managing Agent Greg DeLanoy in an email in March 2025, committing to remediation after Plaintiff mentioned FHA, which further renders the Co-op and its agent complicit and responsible for timely, professional abatement. This email constitutes an admission by a party-opponent under Fed. R. Evid. 801(d)(2) and supports estoppel against Defendants' later denials.

Plaintiff filed complaints with HUD and WCHRC, which are currently under investigation. The Westchester County Human Rights Commission (WCHRC) recently issued a 100-day extension of its investigation up to November 9, 2025, subject to more extensions if needed, reflecting the seriousness of Plaintiff's claims and confirming that her case is not easily dismissible despite two counsels representing them, but instead warrants further inquiry and development of evidence. Any applicable limitations period is tolled by the continuing nature of Defendants' violations and by concealment of unpermitted work, warranting equitable tolling.

Instead of addressing her complaints, Defendants retaliated by delaying, denying accommodations, and claiming her case was "moot" despite only partial work done upstairs and ongoing noise. The persistence of ordinary footsteps reverberating through inadequately soundproofed unit with insufficient rugs over carpeted floors as its previous owner had, the result of non-professional installation of new hardwood floors supervised by the superintendent personally seen uncovered by Plaintiff in fall of 2023, and the constant intrusive impact noises above directly aggravate Plaintiff's PTSD and anxiety. Under the Violence Against Women Act (VAWA) and the Fair Housing Act (FHA), this type of disability-based harm is recognized as seriously as the trauma endured by war veterans, because both involve heightened sensitivity to environmental stressors that impair equal use and enjoyment of housing. HUD and DOJ joint guidance on reasonable accommodations confirms that noise and environmental triggers can constitute disability discrimination when management fails to act.

At the same time, shareholders of 142 Garth Road have been subject to systemic mismanagement by the Cooperative Board and its rotating management agents. Since 2021, the Co-op has had three different managing agents, has concealed notices from shareholders, and has repeatedly imposed assessments. The shareholders were assessed in 2021 (possibly in connection with a settlement), and at the June 2025 shareholder meeting. the Board announced yet another assessment to be imposed in the year ahead and mentioned settlement also.

Compounding these financial burdens, the Board has failed to hold regular annual elections since 2021, allowing overstayed directors to remain in power for third or even fifth terms in direct violation of the New York Business Corporation Law (BCL). These undisclosed assessments, lack of transparent governance, and unlawful retention of power collectively underscore a broader pattern of mismanagement and abuse of authority.

This systemic breakdown is not merely a corporate governance issue as it directly connects to Plaintiff's Fair Housing discrimination complaint. The same entrenched, unelected Board that imposed hidden assessments and insulated itself from accountability also refused to totally enforce House Rules, ignored DOB permit violations, and denied her requests for reasonable accommodation. Their misuse of power, lack of transparency, and retaliation against shareholders who raise legitimate complaints, including her as a disabled VAWA-protected resident, show that the governance failures are inseparable from the discriminatory treatment endured.

Eastchester DOB and Police Department failed to document permit fraud despite clear violations and Superintendent Aldo's admissions. In addition, DOB's cover-up is evidenced by 2021 time-stamped photographs and black-and-white photographs of the reported flooring, coupled with retroactive and dubious licensing entries by a different master plumber purporting to legalize plumbing work, photos of major tearing down of bathroom walls ignored, and the installation of the cast-iron tub after the fact. These materials show that DOB attempted to paper over unpermitted work rather than enforce compliance, demonstrating deliberate indifference and municipal complicity. Plaintiff pleads the foregoing upon information and belief after reasonable inquiry, including review of the records produced or made available to her after her FOIL requests in May and July 2025.

On June 30, 2025 and September 15, 2025, Plaintiff attempted to report permit fraud to the Eastchester police department. Former Officer who was unnamed and Officer #105 refused to detail the incident, the former stating that Plaintiff needed to first ask a

lawyer if she could report to police instead of DOB and after Plaintiff insisted that WCHRC already encouraged police reporting for the permit fraud aspect her complaint, the latter stating falsely that no permit was required for tearing down walls unless beams were touched and that cast iron tubs do not require permits. He also dismissed Plaintiff's credible audio evidence of superintendent's admissions. This refusal to act constitutes dereliction of duty and collusion to protect DOB, further evidencing a policy and practice under Monell theory of liability.

On or about April 2, 2025, Superintendent Aldo admitted that Apt. 2J's owner had paid him approximately $15,000 in cash in 2023 to perform and conceal the unpermitted flooring installation. This admission on top of audio recordings of admitted structural plumbing work establishes a direct financial arrangement to bypass permits and inspections, showing a pattern of corruption and concealment by building staff, enabled by DOB's failure to inspect or enforce compliance.

Noise, discrimination, and retaliation have caused Plaintiff permanent disability aggravation, loss of employment, financial harm, emotional distress, and decreased property value.

All characterizations of Defendants' conduct as "collusion," "corruption," or "cover-up" are intended as fair descriptions of the documented sequence of events and missing approvals/permits and are pleaded upon information and belief based on available records.

BOARD MISGOVERNANCE

Defendants 142 Garth Road Owners, Inc. and its Board of Directors failed to conduct required annual elections since 2021, depriving shareholders of democratic governance and accountability. As a result, certain Board members have remained in extended tenures of three to five years far beyond their elected terms, consolidating control without shareholder mandate. This unlawful entrenchment has enabled continued misgovernance and disregard of shareholder rights.

The Board changed managing agents three times in recent years without transparency, fueling instability and additional assessments. Current management fails to provide mass email notices, unlike prior management, instead slipping papers under doors. This lack of transparency conceals material information about finances, assessments, and

repairs, in violation of fiduciary duties owed to shareholders under BCL §§ 717 and 720. During the June 2025 shareholder meeting, management disclosed that additional assessments were forthcoming, further burdening shareholders financially while failing to address ongoing noise and habitability issues. Through this pattern of misgovernance, Defendants allowed disability-based discrimination and retaliation to persist, ignoring Plaintiff's requests for accommodation despite five medical notes and thereby perpetuating conditions that directly worsened her disability.

SUPERINTENDENT'S UNLICENSED WORK AND COLLUSION

Superintendent Aldo Jimenez routinely engaged in unlicensed plumbing and construction, including bathroom work and the installation of a cast iron bathtub in Apt. 2J without required DOB permits. After Plaintiff had lived in the building for 11 years, Aldo further represented himself to residents as the only person "licensed" to perform or authorize work in the building and insisted that all repairs or alterations had to go through him. This misrepresentation reinforced his control, concealed the unpermitted nature of the work, and enabled the ongoing cover-up of violations. DOB's retroactive licensing entries and photo records were used to obscure these specific activities (tearing down walls, plumbing tie-ins, and the heavy cast-iron tub), instead of pursuing enforcement. Audio recordings capture Aldo's admissions regarding these unpermitted bathroom renovations, which were concealed from DOB, the board, and managing agent. Aldo's workers (including Manolo and others) continued performing unauthorized work not documented in official DOB records or shareholder disclosures, in violation of both housing code and Co-op governance rules.

The Co-op Board and managing agent knowingly allowed this conduct, refrained from addressing Aldo's misconduct through appropriate corrective action, and failed to enforce total compliance with DOB and house rules. These actions constitute breach of fiduciary duty, mismanagement of cooperative property, and discriminatory neglect toward Plaintiff, who repeatedly reported these violations.

CAUSES OF ACTION

COUNT I – Violation of the Fair Housing Act (42 U.S.C. § 3604(f))
- Failure to provide reasonable accommodation.
- Retaliation for protected activity.
- By refusing to remediate the noise and plumbing conditions, Defendants directly

caused the aggravation of Plaintiff's PTSD and GAD. The persistence of these triggers deprived Plaintiff of the full use and enjoyment of her home, constituting disability discrimination under the FHA.

• Defendants' conduct was a direct and proximate cause of Plaintiff's aggravated PTSD and GAD symptoms, economic losses including termination of a permanent UN contract through 2036 in December 2025, and loss of housing enjoyment.

COUNT II – Violation of the Americans with Disabilities Act (42 U.S.C. § 12132)
• Public entities (Town of Eastchester, via DOB and Police) discriminated by refusing to enforce code protections and denying equal services.
• For avoidance of doubt, the ADA claim in Count II is asserted against the Town of Eastchester (a public entity) under Title II, not against the private co-op defendants.

COUNT III – Retaliation and Protection Under Violence Against Women Act (34 U.S.C. § 12491)
• Pattern of harassment and denial of housing protections connected to Plaintiff's gender and status as a vulnerable person under VAWA.
• Plaintiff asserts VAWA-based protections, confidentiality, and retaliation theories to the fullest extent permitted by law. To the extent Defendants contend that any particular VAWA subsection applies only to federally subsidized housing programs, Plaintiff pleads such protections in the alternative and, independently, under the FHA and §1983.

COUNT IV – 42 U.S.C. § 1983 – Civil Rights Violations (Monell Liability)
• Defendants Town of Eastchester, acting through DOB and Police, acted under color of law to deprive Plaintiff of rights (Equal Protection, Due Process, First Amendment right to petition).
• These deprivations reflect official municipal policies, customs, or deliberate indifference, rendering the Town liable under Monell v. Dep't of Social Services, 436 U.S. 658 (1978).
• Municipal liability is further established by the DOB's use of falsified timestamped photos from 2021, retroactive permitting of unlicensed plumbing, and refusal to investigate unpermitted flooring arrangement with the Superintendent. These are not isolated mistakes but official policies or customs amounting to deliberate indifference.
• In the alternative and in addition, municipal liability attaches under Monell because: (a) final policymakers at DOB and the Police Department ratified the challenged inaction and retroactive approvals by declining to correct them after notice; (b) the Town maintained a widespread practice of refusing to accept, document, or investigate permit-fraud complaints, as evidenced by repeated rejections of Plaintiff's reports and possible similar building-wide complaints; and (c) the Town failed to train and supervise

personnel on disability-sensitive complaint intake and housing-code enforcement, with deliberate indifference to the known consequences for persons with PTSD and anxiety disorders.

• To the extent any individual municipal employee is later named, relief is sought against such persons in their individual capacity for actions outside any entitlement to qualified immunity, including refusal to document a valid complaint after notice and direction from supervisory or sister agencies. Notice of Claim to Sue Municipality was served by Plaintiff on 30 June 2025.

COUNT V – Breach of Fiduciary Duty (State Law; BCL)
• Board failed to act in good faith, selectively enforced rules, and ignored medical necessities, breaching fiduciary duties under New York BCL §§ 717 and 720.
• Extended board tenures without elections and repeated failures of governance allowed disability-based & gender discrimination and retaliation to endure in the building, worsening Plaintiff's disability and causing her lasting harm.
• Defendants' conduct was a direct and proximate cause of Plaintiff's aggravated PTSD and GAD symptoms, economic losses, termination of employment by year end, and loss of housing enjoyment.

COUNT VI – Breach of Warranty of Habitability (RPL § 235-b)
• Noise nuisance, failure to maintain building systems, uninhabitable and hazardous conditions.
• Defendants' failure to remediate noise and structural conditions proximately caused Plaintiff's aggravated PTSD, permanent disability, and constructive eviction.

COUNT VII – Negligence and Premises Liability
• Allowing unlicensed plumbing, unsafe construction, failure to supervise superintendents.
• Defendants' conduct was a direct and proximate cause of Plaintiff's aggravated PTSD and GAD symptoms, economic losses, and loss of housing enjoyment.

COUNT VIII – Private Nuisance
• Persistent noise, vibration, and interference with use and enjoyment of apartment.

COUNT IX – Breach of Fiduciary Duty and Corporate Mismanagement (State Law; BCL)
• Defendants 142 Garth Road Owners, Inc., its Board, and managing agents owed Plaintiff fiduciary duties to manage the cooperative in good faith, with due care, and in compliance with governing documents and New York BCL.
• By failing to hold valid annual elections and allowing overstayed tenures, concealing house rules and insurance information, selectively enforcing house rules, retaliation, and

tolerating the superintendent's unpermitted work, Defendants breached their fiduciary obligations.
• The Board's tolerance of Aldo's $15,000 illegal flooring arrangement and structural plumbing renovations without being licensed, concealed from DOB filings, constitutes bad faith, corporate waste, and violation of BCL §§ 717 and 720.
• As a result, Plaintiff has suffered loss of property value, increased financial assessments, constructive eviction, and disability-based injury.

COUNT X – Negligent Hiring, Retention, and Supervision of Superintendent (State Law)
• Defendants Co-op Board and management negligently hired, retained, and supervised Superintendent Aldo despite his repeated violations of DOB laws and admissions of unlicensed work.
• Defendants' failure to remove or discipline Aldo created foreseeable risks of continued housing code violations, noise nuisance, and discrimination against Plaintiff. The Board and managing agent possibly knowingly permitted Aldo to represent himself as the sole "licensed" authority for building work, reinforcing unauthorized practices and foreseeably increasing the risk of code violations and tenant harm. This risk was further compounded by the fact that the former board president, who held the position for four years and only backed out of candidacy in June 2025 publicly claimed in his résumé that he was formerly a deputy town lawyer and Code Prosecutor. Such a background indicates that the Board leadership was not only aware of municipal code requirements but also uniquely positioned to recognize the impropriety of Aldo's unlicensed work yet failed to act. This negligence proximately caused Plaintiff's permanent injury, emotional distress, and financial losses.

REQUEST TO PROCEED UNDER PSEUDONYM / ANONYMIZATION

Plaintiff respectfully requests leave of this Court to proceed under pseudonym and to have all filings anonymized in order to protect her privacy, safety, and mental health. Plaintiff is a survivor of gender-based discrimination and harassment protected under the Violence Against Women Act (34 U.S.C. § 12491) and a person with documented disabilities under the Fair Housing Act and Americans with Disabilities Act. Public disclosure of Plaintiff's full identity and personal residence in this matter would subject her to further retaliation, discrimination, and harm, and would directly undermine the protections guaranteed by VAWA and federal disability law.

Courts within this District have recognized that pseudonymity and confidentiality may be appropriate in cases involving sexual violence, retaliation, or sensitive medical and disability information. Plaintiff therefore asks the Court to permit her to proceed under

pseudonym, with all public filings redacting her name, address, and other personal identifiers, while maintaining her true identity on file with the Court under seal for purposes of service and case administration.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant:
a. A declaration that Defendants violated FHA, ADA, VAWA, and § 1983.
b. Injunctive relief requiring Defendants to provide reasonable accommodation, remediate all remaining noise, and enforce house rules.
c. Compensatory damages for career harm, financial loss, emotional distress, and medical harm plus other non-pecuniary losses.
d. Plaintiff seeks compensatory relief for her injuries and reserves the right to seek punitive damages against the Co-op Board, Blue Woods Management, and responsible individual agents, including property manager Greg DeLanoy, should discovery establish that their conduct was willful, wanton, or malicious. While Plaintiff does not seek punitive damages against municipal entities, she requests such relief against private Defendants if necessary to deter future discriminatory and retaliatory practices.
e. Civil penalties against municipal actors for dereliction of duty. To the extent civil penalties are unavailable against municipal entities, Plaintiff seeks equivalent equitable and declaratory relief and any other sanctions authorized by law.
f. Attorney's fees and costs (42 U.S.C. § 3613(c)(2), 42 U.S.C. § 1988) if one or more are eventually chosen.
g. Any further relief the Court deems just and proper.

JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable, if necessary.

Respectfully submitted,

███████

Dated: 24 September 2025

███████████████████
(Plaintiff proceeding as "Jane Doe")
Plaintiff, Pro Se
Address filed under seal pursuant to protective request